**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

OVIEDO TOWN CENTER II, L.L.L.P.; OVIEDO LHC I, L.L.C.; OVIEDO LHC II, L.L.C.; OVIEDO LHC III, L.L.C.; OVIEDO LHC IV, L.L.C.; OVIEDO TOWN CENTRE DEVELOPMENT GROUP, L.L.L.P.; OVIEDO TOWN CENTRE II PARTNERS, L.L.L.P.; OVIEDO TOWN CENTRE III, L.L.L.P.; OVIEDO TOWN CENTRE IV, L.L.L.P.; ATLANTIC HOUSING PARTNERS L.L.L.P.; CONCORD MANAGEMENT, LTD.; SOUTH FORK FINANCIAL, L.L.C.; and CPG CONSTRUCTION, L.L.L.P.,

Plaintiffs,

v. Case No. 6:16-cv-1005-Orl-37GJK

CITY OF OVIEDO, FLORIDA

Defendant.

---

## ORDER

This cause is before the Court on the following:

1. Defendant's Motion to Dismiss Plaintiffs' Amended Complaint and Incorporated Memorandum of Law (Doc. 23), filed August 25, 2016; and
2. Plaintiffs' Opposition to Defendant[] City of Oviedo, Florida's Motion to Dismiss the Amended Complaint (Doc. 26), filed September 12, 2016.

Upon consideration, the Court finds that the motion is due to be denied.

## BACKGROUND

Plaintiff Oviedo Town Center owns a parcel of land within the City of Oviedo ("**Property**") that leases to Plaintiffs Oviedo LHC I, LLC, Oviedo LHC II, LLC, Oviedo LHC

III, LLC, and Oviedo LHC IV, LLC (collectively, "**Lessees**"). (Doc. 21, ¶ 18.) In turn, Lessees sublease the Property to Plaintiffs Oviedo Town Centre Development Group, LLLP, Oviedo Town Centre II Partners, LLLP, Oviedo Town Centre III, LLLP, and Oviedo Town Centre IV, LLLP (collectively, "**Sublessees**"). (*Id.*) Sometime in 2008, Sublessees engaged Plaintiffs Atlantic Housing Partners ("**AHP**") and CPG Construction to develop and build a twelve building, 240-unit, income-restricted affordable housing apartment community on the Property ("**OTC**").[1] (*Id.* ¶¶ 19–20, 26, 30.) Sublessees also engaged Plaintiffs Concord Management ("**Concord**") and South Fork Financial ("**South Fork**") to provide management and financing, respectively. (*Id.* ¶¶ 21–22.)

Orange County Housing Finance Authority and the Florida Housing Finance Corporation provided federal tax-exempt bonds and tax credit resources to fund the construction of OTC, which restricted both the eligibility requirements of potential tenants and the amount of rent that could be charged. (*Id.* ¶ 23.) To enforce those restrictions, Sublessees entered into land use restriction agreements ("**Agreements**"). (*Id.* ¶ 24.)

Each of OTC's twelve buildings contained a meter to measure water and sewer usage. (*Id.* ¶ 26.) In addition to charges for actual use, Defendant City of Oviedo ("**City**") charged OTC base fees per meter for water and sewer services ("**Usage Policy**"). (*Id.* ¶ 27.) On December 3, 2012, the City amended its Usage Policy and began charging OTC base fees for *each unit* in the community rather than *each meter* ("**New Policy**"). (*Id.* ¶ 29.) According to the Amended Complaint, the New Policy caused the base fee for

[1] The apartment community is named Oviedo Town *Centre*, whereas the owner of the Property is Oviedo Town *Center*. (*See* Doc. 21, ¶¶ 17, 19.) To eliminate any confusion, the Court will refer to Plaintiff-Property Owner as Oviedo Town Center and the apartment community as OTC.

water and sewer services to increase from approximately $339 per month to approximately $7,557 per month—more than a 2,126% increase. (*Id.* ¶ 31.) Under the Agreements, this increase could not be passed on to OTC tenants. (*Id.* ¶ 32.) In an effort to continue operating, Sublessees "made numerous requests" to the City for an exception from the New Policy. (*Id.* ¶ 35.) The City denied their request. (*Id.* ¶ 36.)

Consequently, Plaintiffs filed this action, alleging that the City violated the Fair Housing Act and Florida's Fair Housing Act (collectively, "**FHA**") by arbitrarily denying Plaintiffs an exception from the City's New Policy. (*See id.* ¶ 37.) Without relief from the New Policy, Plaintiffs allege that OTC cannot continue operating. (*Id.* ¶¶ 37, 40.) Because the majority of the OTC tenants are minorities, Plaintiffs allege that the City's denial of their request for an exception from the New Policy was racially motivated and intended to displace these tenants from the low-income housing provided by OTC. (*See id.* ¶¶ 38, 39.) As such, Plaintiffs allege that the City's denial disparately impacts these minority households in OTC. (*Id.* ¶ 39.) For their part, Plaintiffs allege that if they are unable to operate, they will be denied the benefits of various operating agreements. (*Id.* ¶ 40.)

The City moved to dismiss the Amended Complaint for lack of standing and failure to state a claim upon which relief can be granted or, alternatively, for a more definite statement under Rule 12(e). (Doc. 23 ("**MTD**").). The City contests standing because they say no low-income tenant has been injured and because these Plaintiffs are not owners or operators of OTC and have not suffered the type of harm contemplated by the FHA. Plaintiffs responded (Doc. 26), and the matter is now ripe for adjudication.

## 12(b)(1) MOTION

### I. Standards

"Standing to bring and maintain a lawsuit is fundamental to invoking a federal court's subject matter jurisdiction." *Sierra Club, Inc. v. St. Johns River Water Mgmt. Dist.*, No. 6:14-cv-1877-Orl-40DAB, 2015 WL 6814566, at *4 (M.D. Fla. Nov. 6, 2015) (citing *DaimlerChrsyler Corp. v. Cuno*, 547 U.S. 332, 340–42 (2006)). To establish constitutional standing at the pleading stage, a plaintiff must plausibly allege: (1) a concrete, actual injury-in-fact; (2) a causal connection between the injury and the defendant's conduct; and (3) a likelihood that the injury can be redressed. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). In addition, a plaintiff seeking injunctive relief lacks standing unless he alleges facts giving rise to an inference that he will suffer future harm by the defendant. *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001).

The amount of proof required to establish standing varies with the progression of the litigation. Indeed,

> [s]ince [the standing elements] are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.

*See id.* at 561.

"Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)." *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). Attacks on subject matter jurisdiction under Rule 12(b)(1) come in two forms: facial attacks and factual attacks. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29

(11th Cir. 1990). "'Facial attacks on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 1529. "Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* "Challenges to a party's standing is a factual attack on the district court's subject matter jurisdiction that requires the court to look beyond the four corners of the complaint." *Sierra Club*, 2015 WL 6814566, at *4 (citing *Garcia v. Copenhaver, Bell & Assocs., M.D.'S, P.A.*, 104 F.3d 1256, 1260–61 (11th Cir. 1997)).

## II. Discussion[2]

The FHA makes it unlawful to "refuse to sell or rent . . . or otherwise make unavailable or deny, a dwelling to any person because of race . . . ."[3] 42 U.S.C. § 3604(a); *see also* Fla. Stat. § 760.23(1). "An aggrieved person may commence a civil action . . . after the occurrence or the termination of an alleged discriminatory housing practice . . . ." 42 U.S.C. § 3613(a)(1)(A). An "aggrieved person" is any person who "claims to have been injured by a discriminatory housing practice," or "believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. § 3602(i).

As a prerequisite to maintaining an action under the FHA, Plaintiffs must

[2] Though the City frames its 12(b)(1) motion as a factual attack, none of the evidence it propounds is dispositive of its arguments with respect to lack of standing. (*See* Docs. 23-1, 23-2, 23-3, 23-4.) Accordingly, the Court has resolved the 12(b)(1) motion on the pleadings alone.

[3] "The Florida Fair Housing Act contains provisions that are substantively identical to the federal Fair Housing Act . . . ." *See Loren v. Sasser*, 309 F.3d 1296, 1299 n.9 (11th Cir. 2002). Because the facts and circumstances that comprise the federal and state fair housing claims are also identical, the Court will analyze such claims together.

sufficiently allege statutory standing. In its MTD, the City maintains that: (1) all Plaintiffs lack standing because no low-income tenant has yet suffered an injury in fact; and (2) because Plaintiffs Oviedo Town Center, Lessees, Concord, and South Fork are not legal owners or operators of OTC, they have not suffered the type of harm contemplated under the FHA. (*See* Doc. 23, pp. 11–16.)

Generally, a statutory cause of action "extends only to those plaintiffs whose interests fall within the zone of interests protected by the law invoked." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388 (2014).[4] The zone of interests test bars a plaintiff's claims when his "interests are so marginally related to or inconsistent with the purpose implicit in the statute that it cannot reasonably be assumed that Congress authorized that plaintiff to sue." *Id.* at 1389 (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2210 (2012)). Notwithstanding these amorphous boundaries, "[statutory] standing under [the FHA] extends 'as broadly as is permitted by Article III of the Constitution.'" *City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1277 (11th Cir. 2015), *cert. granted*, 136 S. Ct. 2544 (2016) (quoting *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 98 (1979)); *accord Havens Realty Corp v. Coleman*, 455 U.S. 363, 372 (1982); *Trafficante v. Metropolitan Life Ins.*, 409 U.S. 205, 209 (1972). In this context, the phrase "aggrieved person" extends

---

[4] The label "statutory standing" is a misnomer in the context of a "zone of interests" analysis, as the proper inquiry is whether a plaintiff "has a cause of action under the statute." *Lexmark*, 134 S. Ct. at 1387. This inquiry is not a matter of standing and does not impact the Court's subject matter jurisdiction; rather the inquiry is one of statutory interpretation. *Id.* at 1388. Nevertheless, because binding precedent addresses the issue as a standing requirement, this Court follows suit. *See id.* at 1387–88; *City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1274 (11th Cir. 2015).

as broadly as is constitutionally permissible under Article III.[5]

Here, the City misapprehends Plaintiffs' alleged injury. (*See* Doc. 23 at 14.) Plaintiffs have asserted injury to their *own* interests—that is, that "they will be unable to continue to receive the benefits of various agreements." (Doc. 21, ¶ 40.) Such alleged injuries are sufficient to satisfy Article III at the pleading stage. *See Bischoff v. Osceola Cty.*, 222 F.3d 874, 878 (11th Cir. 2000) (finding that when standing is raised on a motion to dismiss, general factual allegations of injury resulting from the defendant's conduct may be sufficient to survive dismissal); *see also Havens*, 455 U.S. at 375–76 (indicating that a plaintiff need not be the target of the discriminatory act to have standing under the FHA). Further the Complaint alleges that all Plaintiffs allegedly will suffer identical harm from the City's purportedly racially-motivated denial of their request for exception from the New Policy. (Doc. 21, ¶ 40.)

Admittedly the casual connection between the City's denial of an exception and the economic injury suffered by Plaintiffs only passively involved with OTC is attenuated.[6] Nonetheless, the Complaint sufficiently alleges harm that falls within the zone of interests contemplated by the FHA. At the pleading stage, dismissal on this ground would be inappropriate. *See Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981) (recognizing that before making "factual determinations decisive of a motion to dismiss for lack of

---

[5] While the U.S. Supreme Court has questioned the wisdom of this more expansive interpretation of "aggrieved person," it has yet to overrule itself on this issue in the Title VIII setting. *See Thompson v. N. Am. Stainless, LP*, 562 U.S. 170 (2011).

[6] In particular, the allegations of the Complaint merely allege that: (1) Oviedo Town Center owned the Property on which OTC was built (Doc. 21, ¶ 17); (2) Lessees merely lease the Property to Sublessees (*Id.* ¶ 18); (3) Concord manages OTC (*Id.* ¶ 21); (4) South Fork provides financing for OTC (*Id.* ¶ 22); (5) CPG Construction built OTC (*Id.* ¶ 20); and (6) APH developed OTC (*Id.* ¶ 19).

jurisdiction," "the district court must give the plaintiff an opportunity for discovery"). At the pleading stage, the City's view of statutory standing under the FHA is too narrow and contrary to the clear weight of authority. *See Havens*, 455 U.S. at 372; *Gladstone*, 441 U.S. at 98; *Trafficante*, 409 U.S. at 209; *City of Miami*, 800 F.3d at 1277. [7]

## 12(b)(6) MOTION

### I. Standards

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570). In considering a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a court limits its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief. *Neitzke*

[7] The City also contends that the Johnson Act, 28 U.S.C. § 1342, divests the Court of jurisdiction over Plaintiffs' claims. (Doc. 23, p. 10.) However, the Johnson Act applies, *inter alia*, where federal jurisdiction is based "solely on diversity of citizenship or repugnance of the order to the Federal Constitution." 28 U.S.C. § 1342(1). Here, jurisdiction is based on a federal statute. (Doc. 21, ¶ 15.) As such, the Johnson Act is inapplicable.

*v. Williams*, 490 U.S. 319, 326 (1989).

## II. Discussion

The City also moves for dismissal under Rule 12(b)(6) because: (1) Plaintiffs fail to allege an outright denial or refusal to provide municipal services to OTC; and (2) Plaintiffs' suit is time barred. (Doc. 23, pp. 7–11, 16–20.)

The City recasts the Plaintiffs' claims in an unnatural light. Plaintiffs' FHA claims are not predicated on the City's denial of services under 42 U.S.C. § 3604(b). (*See* Doc. 21, ¶¶ 43, 51.) Rather, Plaintiffs allege that the City thwarted OTC's ability to continue its operations due to a racially-motivated decision in violation of 42 U.S.C. § 3604(a). (*Id.*) The City sets forth facts purporting to establish that Plaintiffs' inability to continue operating is due to poor business practices, rather than the City's alleged discriminatory action. (Doc. 23, p. 11.) While this causation argument may ultimately carry the day, at this juncture, the Court must accept Plaintiffs' allegations as true. As such, the Court cannot reasonably conclude that no cause of action exists under the FHA.

The City's statute of limitations argument is equally unavailing. Under the FHA, an aggrieved person has two years "after the occurrence or the termination of an alleged discriminatory housing practice" to commence an action. 42 U.S.C. § 3613(a)(1)(A). Here, the alleged discriminatory practice—the denial of an exception from the New Policy—occurred in May 2016 and Plaintiffs commenced this action on June 9, 2016. (Doc. 21, ¶ 36; *see also* Doc. 1.) Thus, Plaintiffs' suit is not time barred on the facts alleged, and the City's MTD on the basis of Rule 12(b)(6) is due to be denied.

**12(e) MOTION**

As an alternative to dismissal, the City moves for a more definite statement pursuant to Rule 12(e). (*See* Doc. 23, pp. 20–21.) More definite statements are appropriate only where a pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." While perhaps not as specific as the City would prefer, the Amended Complaint sufficiently sets out the factual basis for Plaintiffs' allegations (*See* Doc. 21, ¶¶ 28–40), the parties involved (*see id.* ¶¶ 17–27), the Plaintiffs' harm (*See id.* ¶ 40), and the law pertinent to each claim (*see id.* ¶¶ 41, 48, 55, 60). Requesting a more definite statement on the basis that Plaintiffs have neither detailed the exact duties and obligations owed to specific low-income tenants nor explained their obligations under the Agreements erroneously heightens Plaintiffs' burden at the pleading stage. (*See* Doc. 23, pp. 20–21.) Indeed, such an argument is more appropriate for a Rule 56 motion after both sides have had the benefit of discovery. As such, the City's motion for a more definite statement is due to be denied.

**CONCLUSION**

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Plaintiffs' Amended Complaint and Incorporated Memorandum of Law (Doc. 23) is **DENIED**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on November 29, 2016.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record